### ALVERSON v. OREGON-WASHINGTON R. & NAV. CO.*

(Circuit Court of Appeals, Ninth Circuit. September 5, 1916.)

#### No. 2703.

1. APPEAL AND ERROR ☞272(2), 501(4)—EXCEPTIONS TO INSTRUCTIONS—TIME FOR TAKING—RECORD.

In the federal courts, exceptions to instructions given, or to the refusal to give instructions requested, to be considered by an appellate court, must be taken at the trial, and while the jury is at the bar, and such fact must affirmatively appear.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2304; Dec. Dig. ☞272(2), 501(4); Trial, Cent. Dig. §§ 254, 680.]

2. APPEAL AND ERROR ☞216(1), 263(1)—REVIEW—INSTRUCTIONS—EXCEPTIONS.

The construction placed upon a contract by a trial court in its instructions cannot be reviewed, where no different instructions on the point were requested, and no exceptions taken to those given.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516, 1518; Dec. Dig. ☞216(1), 263(1); Trial, Cent. Dig. § 627.]

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action at law by J. L. Alverson against the Oregon-Washington Railroad & Navigation Company and others. Judgment for defendant named, and plaintiff brings error. Affirmed.

Alverson, plaintiff below (and plaintiff in error here), sued the Oregon-Washington Railroad & Navigation Company and J. A. Caughren, Carlos N.

Boynton, H. W. Church, S. A. McCoy, and Martin Woldson, partners under the name of Caughren, Boynton & Co., to recover damages for lost profits resulting from an alleged breach by defendant in error railroad company of a contract for the performance of certain railroad construction work. In the course of the litigation all parties defendant were dismissed, and the action was carried on as against the railroad company, sole defendant and defendant in error herein. Defendant company answered, denying any liability. The case was tried before a jury, verdict was rendered in favor of the defendant railroad company, and after judgment was entered on verdict, writ of error to this court was sued out by plaintiff. The case is as follows:

At some time in 1911 the Oregon-Washington Railroad & Navigation Company entered into a contract with the partnership firm of Caughren, Boynton & Co. involving the construction by that firm of certain concrete structures required in the building of a railroad line into the city of Spokane, Wash. Caughren, Boynton & Co. sublet that portion of their construction work involving the concrete structures in question to a partnership firm of Alverson & Koeper by a subcontract dated May 11, 1911. While the subcontract was in existence, Alverson & Koeper dissolved, and Alverson became the subcontractor, as the successor of the firm of Alverson & Koeper. Caughren, Boynton & Co. went ahead with the work called for in their contract with the railroad company. During the progress of the work controversies arose, however, between them and the railroad company, which were submitted to arbitration in accordance with an arbitration agreement entered into on April 25, 1912, between the railroad company and the Caughren firm. This arbitration agreement referred to the contract of June, 1911, between the firm and the railroad company, and after provisions that matters of difference should be settled between them by arbitrators, there appears the following provision: "In event that the railroad company does not elect, within 30 days from the date hereof, to have the contractor complete the structures, the construction of which has not at this date been commenced, then and in that event the railroad company shall assume all obligations of the contractor to the party or parties holding subcontracts for the construction thereof, and said arbitrators shall determine the amount of profit which the contractor might reasonably have made upon said portions of said work, and make an award thereof, which shall be paid by the railroad company in consideration of the cancellation of said contract as to said work." In a letter dated February 1, 1912, Caughren, Boynton & Co. wrote to Alverson, referring to the original contract dated May 15, 1911, between themselves and Alverson & Koeper, and further referring to the release or assignment of that contract dated January 23, 1912, and expressing the wish that Alverson proceed with the work in accordance with the prices set forth in the contract between Caughren, Boynton & Co. and Alverson & Koeper, dated May 15, 1911, with the understanding that the work was to be dependent upon the action of the railroad company as to the time they would desire it to be done. The railroad company did not elect to have the contractors (the Caughren firm) complete the structures yet to be constructed, and it is to be accepted that the company was bound to recognize Alverson with respect to his subcontract.

The plaintiff charges that the railroad company, after its failure to elect to proceed with the work, entered into a contract with other contractors to perform the work and furnish the material called for in the contract theretofore entered into between the railroad company and Caughren, Boynton & Co. and between Caughren, Boynton & Co. and plaintiff, and refused to allow plaintiff to go ahead with the work and complete the same. The defendant answers that it tendered the performance of the work to the plaintiff and that he refused to perform in accordance with the terms of his subcontract, but that he imposed upon the defendant as a condition of performance that the defendant finance him and furnish him sand and gravel required for the construction work under consideration.

At the conclusion of the evidence the court charged the jury, in effect, that the plaintiff was limited to the terms and provisions of the contract between Caughren, Boynton & Co. and Alverson & Koeper, and that the terms of that contract could not be modified by reference to any other contract introduced in the case, and that the contract between the railroad company and Caughren,

Boynton & Co., called the "arbitration agreement," was admitted to assist in determining the subject-matter and limits of the work contemplated in the Alverson & Koeper contract. The court then charged that the main contract between Caughren, Boynton & Co. and Alverson & Koeper, under which plaintiff claimed, did not require the railroad company to furnish sand without cost to the plaintiff, and that, if the jury found from the evidence that the plaintiff imposed that condition upon the defendant, then the plaintiff, in effect, broke and abandoned the contract, and that under such circumstances the defendant should recover, And again the court said, in effect, that if the plaintiff imposed upon the defendant as a condition for the doing of the work that the defendant furnish sand or gravel without cost upon the work, or imposed the condition of financing him, then and in either of said contingencies the plaintiff, in.making such demand and imposing such conditions, thereby abandoned and broke the contract, and that the defendant would be excused from the performance of the contract by it.

At the conclusion of the charge the court, in the presence of the jury, and before the jury retired, inquired of counsel for both parties as follows: "Anything further, gentlemen?" Counsel for the plaintiff then and there answered: "I don't think of anything, your honor." The record continues: "Whereupon counsel for the defendant then and there in the presence of the jury, and before the jury retired, reserved and took exceptions to certain instructions given by the court, and to the refusal of the court to submit to the jury certain instructions requested by defendant. But no exceptions to the charge of the court were taken by plaintiff before the jury retired, or at any other time, excepting those taken after the return of the verdict, pursuant to the stipulation hereinafter set forth." It appears that the jury retired April 22, 1915, and returned a verdict in favor of the defendant on April 23, 1915. Thereafter, on May 1, 1915, the parties entered into and filed with the clerk of the court the following stipulation: "It is hereby stipulated and agreed by the parties hereto, by their respective counsel, that plaintiff may have 30 days in which to take and file exceptions to the court's instructions, and for the preparation and service of a bill of exceptions in the above-entitled case." It further appears that thereafter, pursuant to the stipulation, on the 20th of May, 1915, plaintiff, by his attorney, took exceptions to and filed with the clerk of the court exceptions to the instructions of the court and assigned the following errors: That the court erred in instructing the jury that, should it find from the evidence that plaintiff demanded that the defendant furnish sand and gravel without cost, or that plaintiff required as a condition for the prosecution and performance of its contract that the railroad company finance the plaintiff, then plaintiff, in effect, broke and abandoned his contract.

Plummer & Lavin and O. C. Moore, all of Spokane, Wash., for plaintiff in error.

W. W. Cotton and A. C. Spencer, both of Portland, Or., and Hamblen & Gilbert, of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The points urged by counsel for the plaintiff in error relating to the giving of certain instructions to the jury are not for consideration by this court. The record affirmatively shows that after the court had delivered the charge to the jury the judge inquired of counsel for both parties whether there was anything further to present, and that counsel for the plaintiff replied that he did not think of anything further. Counsel for the defendant, in accord with the proper practice, in the presence of the jury, and before the jury retired, took exceptions to certain instructions given by the court and to the refusal of the court to submit to the jury certain instructions requested by defendant.

Plaintiff is not aided by the stipulation of May 1st, because not only did he fail to take exceptions to the instructions which the court gave before the jury retired, but his express statement to the court was to the effect that he had none to present. Under such circumstances the subsequent stipulation is to be construed as having been made with the purpose of giving to the parties, not a right to take exceptions as of the time when the jury was at the bar, but as affording the plaintiff such rights as might attach under the law and the practice of the federal courts, namely, drawing out the exceptions in form and presenting them for signature.

The question involved was squarely decided by this court before the present case was tried. Beatson Copper Company v. Pedrin, 217 Fed. 43, 133 C. C. A. 29. In that case there was a stipulation made in the presence of the jury, and before it retired, that plaintiff and defendant have until a certain time "to make and take exceptions to instructions given and refused"; but this court, citing the earlier cases of Arizona & New Mexico Railway Company v. Clark, 207 Fed. 817, 125 C. C. A. 305, and Western Union Telegraph Company v. Baker, 85 Fed. 690, 29 C. C. A. 392, declined to consider the assignments of error in respect to giving and refusing to give certain instructions, because exceptions were not taken in open court while the jury were at bar. In Star Company v. Madden, 188 Fed. 910, 110 C. C. A. 652, the Court of Appeals of the Second Circuit quoted the language of the Supreme Court in Phelps v. Mayer, 15 How. 160, 14 L. Ed. 643, holding that it must appear by the transcript, not only that the instructions were given or refused at the trial, but also that the party who complains of them excepted to them while the jury were at the bar. In Johnson v. Garber et al., 73 Fed. 523, 19 C. C. A. 556, Judge Taft, speaking for the Circuit Court of Appeals of the Sixth Circuit, held to the same effect and cited many decisions, going back to Walton v. United States, 9 Wheat. 651, 6 L. Ed. 182, ruling that an exception to be of any avail must be taken at the trial, and that, although it may be reduced to form and signed afterwards, the fact that it was seasonably taken must appear affirmatively in the record or bill of exceptions duly allowed, or otherwise. The matter was regarded as one of law, notwithstanding the fact that a practice at variance with the rule had obtained and was recognized and acquiesced in by the trial judge. Greene et al. v. United States, 154 Fed. 401, 85 C. C. A. 251; Montana Mining Company v. St. Louis Mining & Milling Company, 147 Fed. 897, 78 C. C. A. 33; Merchants' Exchange Bank v. McGraw, 76 Fed. 930, 22 C. C. A. 622; St. Louis, I. M. & S. Railway Company v. Spencer, 71 Fed. 93, 18 C. C. A. 114; Price v. Pankhurst et al., 53 Fed. 312, 3 C. C. A. 551.

[2] Paragraph 4 of the agreement made between Caughren, Boynton & Co., designated in the agreement as the "railroad company," and Alverson & Koeper, which may be called Alverson's contract, provided that if the contractor, in the opinion of the engineer, communicated in writing by the engineer to the contractor, should fail to comply with the provisions of the contract to be performed by the contractor, or should neglect to prosecute the work with a sufficient force to insure

completion within the time specified, the railroad company, at its option, could, "after the expiration of 10 days from the mailing of such notice to the contractor at his post office address, cancel this contract and declare the same void, and a notice in writing mailed to the contractor at his post office address, signed by the railroad company, shall be sufficient for that purpose." It was further provided that in the event the contract was canceled, as therein provided, the contractor should have no claim against the railroad company for damages, and the compensation or percentage unpaid should be retained, etc., "and the railroad company may, at its option, employ other parties to complete said work, or any part thereof, and any loss occasioned by reason of such default to be chargeable against the contractor, the amount of such loss to be estimated by the engineer, whose decision shall be final and binding on the parties hereto."

The argument of plaintiff is that a full compliance by the railroad company with the requirements of this provision of the contract was necessary as a condition precedent to a rescission by the railroad company, even had Alverson given sufficient cause for a declaration of forfeiture, and it is urged that, inasmuch as the railroad company did not give the required notice nor pretend to, its failure in that regard shows that its officers fully understood that no sufficient grounds for forfeiture existed, and that letting the work to other contractors was done with full knowledge and a deliberate violation of the rights of Alverson. But as the bill of exceptions nowhere shows that plaintiff requested the District Court to charge the jury in respect to the effect of paragraph 4 of Alverson's contract, or that plaintiff asked the attention of the trial court to the point now urged, and as no error was assigned in respect to the matter, there is no ground for complaint. Phœnix Railway Company v. Landis, 231 U. S. 578, 34 Sup. Ct. 179, 58 L. Ed. 377; Humes v. United States, 170 U. S. 210, 18 Sup. Ct. 602, 42 L. Ed. 1011; Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343; Isaacs v. United States, 159 U. S. 487, 16 Sup. Ct. 51, 40 L. Ed. 229; Texas & Pacific Railway Company v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78; Schultz v. United States, 200 Fed. 234, 118 C. C. A. 420. We do not look upon the point as presenting an instance of "plain error" which, under rule 11 of the court (150 Fed. xxvii, 79 C. C. A. xxvii), may be noticed at the option of the court.

Finding no reason to disturb the action of the District Court, its judgment is affirmed.