## In re HARTWELL OIL MILLS.

(District Court, N. D. Georgia. December 5, 1908.)

BANKRUPTCY (§ 60*) — INVOLUNTARY PROCEEDINGS — ACTS OF BANKRUPTCY — GENERAL ASSIGNMENT—CORPORATIONS—"GENERAL ASSIGNMENT."

A resolution adopted by the stockholders of a corporation, authorizing the board of directors, through a committee to be appointed by it, to advertise and sell the property of the corporation at auction at not less than a stated price, and to pay the debts of the corporation with the proceeds, with power to declare such sale off in a certain contingency, was not a general assignment, which constituted an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3422), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1025).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 4, pp. 3052–3054.]

In Bankruptcy. On involuntary petition.

W. L. Hodges, for alleged bankrupt.

A. G. & Julian McCurry and Moore & Pomeroy, for petitioning creditors.

NEWMAN, District Judge. In July, 1908, an involuntary petition in bankruptcy was filed against the Hartwell Oil Mills. The Hartwell Oil Mills filed an answer to the petition, denying insolvency and that it had committed any acts of bankruptcy as alleged. The matter was referred to E. L. Upson, Esq., as special master, to hear evidence and pass upon the questions raised by the petition and answer. He has filed a report, finding that at the time the petition in bankruptcy was filed the Hartwell Oil Mills was not insolvent and that it had not committed any act of bankruptcy. The special master having found that the Hartwell Oil Mills was not insolvent, it became unnecessary for him to consider, and it is unnecessary to consider here, some of the minor grounds of bankruptcy alleged—preferential payment to creditors.

Exceptions have been filed to the report of the special master, and the same have been argued and submitted. The first question raised is on the allegation in the creditors' petition to the effect that the Hartwell Oil Mills had, within four months before the filing of the petition, made a general assignment for the benefit of creditors. The evidence to sustain this allegation is this: On June 3, 1908, at a regular meeting of the stockholders of the Hartwell Oil Mills, it was determined that it was important that all the stockholders be present in person or by proxy at this meeting, and the meeting appears to have been adjourned to June 20, 1908. At all events, on June 20, 1908, there was an adjourned meeting of stockholders at which a majority of the capital stock was represented. New officers for the corporation were elected, and on motion the following resolution was adopted:

"Resolved: That the board of directors appoint a commission, to compose of three, to advertise for 30 days and sell at public sale on the first Tuesday in August, nineteen hundred and eight, at twelve m., the Hartwell Oil Mills and machinery, ginnery, and the whole oil mill plant for cash. That the upset price be fixed at twenty-two thousand five hundred dollars ($22,500.00). That, if the debts of the mill can be arranged for between now and the date of the sale by the board of directors, then the sale may be declared off by a majority of the board of directors. That no bid shall be recognized by the commission until the bidder shall first deposit with the commission a certified check to twenty-five hundred dollars, to be forfeited to the Hartwell Oil Mills if he does not comply with the term of his bid within ten days of the sale. That the board of directors be and are hereby authorized to make title to the purchaser of said property in conformity to sale made by commission. That the board of directors fix the compensation of the commissioners. That, if the said property be sold, then the board of directors are directed to wind up and settle the debts of the mill according to law."

It is claimed that this action of the stockholders constituted a general assignment for the benefit of creditors. The special master found that it did not, and he found correctly. The commission to sell the mill, as shown by the advertisement in evidence, consisted of two of the directors and Mr. George C. Grogan, an attorney at law, who held a proxy, as shown by the minutes of the meeting of stockholders on June 3d. The action of the stockholders simply amounted to the appointment of a committee—commission, as it was called—to endeavor to sell the property of the company to the best advantage and wind up its affairs. Before the date of this sale arrived, financial arrangements were made by the officers of the mill which rendered the sale unnecessary. I hardly think this question needs discussion.

The next matter for consideration is that of the insolvency of the Hartwell Oil Mills. There was considerable evidence on this question before the special master. In his report he says:

"I find the preponderance of the evidence establishes the fair market value of the property of the Hartwell Oil Mills to be over twenty-five thousand dollars ($25,000). I find that the total indebtedness of the said mills is less than $25,000. I find that the Hartwell Oil Mills was not insolvent on the 31st day of July, A. D. 1908, the date these involuntary proceedings were filed."

An examination of the evidence taken before the special master and filed by him shows this finding to have been abundantly sustained. While there was some evidence the other way, the special master correctly concludes that the weight of the evidence was that the company was entirely solvent.

The petition in bankruptcy in this case should be dismissed, and it is so ordered.